**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| )  | |
| v.   ) | |
| )  | Docket No. 04-CR-12-P-S |
| ROBERT BROWN,   ) | |
| )  | |
| Defendant.   ) | |

**ORDER ON MOTION FOR A NEW TRIAL**

Before the Court are Defendant's Motion for a New Trial (Docket # 298) and Defendant's Motion to Submit Documents under Seal (Docket # 299). With respect to the latter motion, the Court hereby GRANTS the Motion to Submit Documents under Seal and ORDERS that Exhibit A to Docket # 299 (which consists of both a letter and a postmarked envelope) shall be SEALED. With respect to Defendant's Motion for a New Trial, the Court hereby DENIES this Motion for the reasons explained below.

Before turning to the merits of the Motion for a New Trial, the Court notes that it first considered the issue of whether it retains jurisdiction to decide the Motion despite the Defendant's Notice of Appeal (Docket # 282), which was filed on August 11, 2006. Ultimately, the Court determined that it retains jurisdiction to make the below ruling on the Motion for a New Trial in accordance with the procedure explained in United States v. Camacho, 302 F.3d 35, 36-37 (2d Cir. 2002).

**I.    STANDARD OF REVIEW**

Defendant's Motion invokes Federal Rule of Criminal Procedure 33; specifically, the portion of the rule that allows for a motion to be filed based on "newly discovered

1

evidence . . . within 3 years after the verdict." Fed. R. Crim. P. 33(b)(1).[1] In general, the First Circuit has explained that a defendant pressing such a motion "must prove four factors: (1) the newly discovered evidence was unknown or unavailable at the time of trial; (2) the defendant was duly diligent in trying to discover it; (3) the evidence was material; and (4) the evidence was such that it would probably result in an acquittal upon retrial." United States v. Desir, 273 F.3d 39, 42 (1st Cir. 2001) (citations omitted).

In this case, Defendant's newly discovered evidence does not relate to the actual evidence submitted at trial but rather raises a question of juror bias and/or taint. With respect to such claims, the First Circuit has held:

> When a colorable claim of jury misconduct surfaces, the district court has broad discretion to determine the type of investigation which must be mounted. The trial judge may, but need not, convene a fullblown evidentiary hearing. Rather, his primary obligation is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so, whether it was prejudicial.

United States v. Boylan, 898 F.2d 230, 258 (1st Cir. 1990) (internal citations omitted). Of course, when claims of juror bias or misconduct arise *after* the verdict has been returned, the Court must proceed cautiously given the First Circuit's explicit limitation on Court-supervised, post-verdict interviews of jurors to only "such extraordinary situations as are deemed appropriate." United States v. Kepreos, 759 F.2d 961, 967 (1st Cir. 1985). "The[se] restrictions on post-verdict contact and the limitations on juror testimony about deliberations, Fed.R.Evid. 606(b), exist to protect important interests in the finality of the verdict and the privacy of the deliberations." United States v. Walsh, 75 F.3d 1, 8 (1st Cir. 1996) (citing Tanner v. United States, 483 U.S. 107, 120 (1987)).

---

[1] To the extent that Defendant's Motion might be read to argue for a new trial on grounds other than newly discovered evidence, such arguments are clearly untimely pursuant to Rule 33(b)(2) and are likely beyond the Court's current jurisdiction. (See Gov't Obj. (Docket # 300) at 2-5.) Thus, the Court has limited its review of Defendant's Motion to any newly discovered evidence that might support a request for a new trial.

Regardless of the type of investigation undertaken, the Court ultimately must determine whether or not the alleged bias or taint was "harmless." Boylan, 898 F.2d at 262.

## II.  FACTUAL & PROCEDURAL HISTORY

Defendant Robert Brown first went to trial on January 3, 2005. On January 6, 2005, that trial ended with a hung jury and the Court finding that manifest necessity required declaration of a mistrial. After an interlocutory appeal,[2] jury selection for a second trial was held on February 6, 2006. As a result of the jury selection, the Court empaneled a jury of twelve as well as two alternates. Ultimately, this jury consisted of 9 men and 5 women; both of the alternates selected were male. As is relevant to the allegations now before the Court, all 14 persons ultimately selected to serve on this jury were asked the following:

> The Court will instruct you that the fact that the defendant has been arrested and charged, that is, accused of a crime, is no evidence whatsoever of his guilt and is not to be considered by you in any way in determining whether he is guilty or not guilty. Is there anyone of you who does not understand that instruction? Is there anyone of you who could not or would not follow that instruction?

(2/6/06 Tr. (Docket # 294) at 10-11.) In addition, all potential jurors were asked finally:

> Having heard my description of what this case is about and the questions I put to you, do you know of any reason why you could not sit on this jury and render a verdict based solely on the evidence presented at trial, and in the context of the law as the Court will give it to you in its instructions, disregarding any other ideas, notions or beliefs about the law that you may have encountered?

(2/6/06 Tr. at 13-14.) None of the 14 persons ultimately selected to serve on the jury gave affirmative responses to either of the above inquiries.

The second trial commenced on February 22, 2006 and concluded the next day with the jury's return of a guilty verdict (Docket # 259). At the conclusion of the trial,

---

[2] See United States v. Brown, 426 F.3d 32 (1st Cir. 2005) (affirming this Court's decision that declaration of a mistrial was a manifest necessity and that, as a result, double jeopardy did not bar a second trial).

the Court issued its standard Order Prohibiting Post-Verdict Contact with Jurors (Docket # 260) in accordance with United States v. Kepreos, 759 F.2d 961 (1st Cir. 1985). On August 3, 2006, this Court sentenced Robert Brown to 262 months imprisonment with 6 years of supervised release. Defendant then filed his notice of appeal on August 11, 2006.

Defense Counsel apparently received a letter from Prospective Juror 8[3] shortly after sentencing. This letter was dated and postmarked August 22, 2006, which means it was written approximately six months after the conclusion of the trial. Both the letter and the transcript of the February 6, 2006 jury selection document that Prospective Juror Number 8 was in fact part of the panel of 32 potential jurors initially selected to serve on the jury for the Robert Brown trial. Potential Juror 8 was ultimately not chosen to sit on the jury after counsel exercised their peremptory challenges. (See Feb. 6, 2007 Tr. at 44.)

The August 22, 2006 Letter from Prospective Juror 8 to Defense Counsel recounts the following incident from jury selection:

> As we sat there waiting for jury selection to begin, Robert Brown was in the doorway of the right side of the courtroom near the seats of potential selections, from where I was sitting I had seen Robert Brown with his hands behind his back, and I noticed that there were other men with him, who had reached behind Robert Brown's back perhaps to remove something. I assumed it was handcuffs so I made the comment to the gentlemen sitting at my left that he, Robert Brown, was an inmate. He said, "How can you tell?" I said, "The way he's being escorted out and it also looked as though he had handcuffs on when he exited the door."

(Aug. 22, 2006 Sealed Letter (Docket # 299).) Prospective Juror 8's Letter goes on to explain that the fellow male prospective juror to whom she made this comment was selected to sit in the box of potential jurors before her name was called and that this man

---

[3] The Court has already sealed this letter to protect the identity of the juror in question. Thus, in this Order, the Court will refer to both this juror and any other jurors by juror number only.

was ultimately selected as one of the 14 jurors for the Robert Brown trial. The letter closes by noting Prospective Juror 8's concern that her comment "could have caused a possible biased opinion of Robert Brown." (Id.)

Without explanation for the delay, Defense Counsel first brought this letter to the Court's attention on February 5, 2007 in conjunction with his filing of the pending Motion for a New Trial. As per the Court's request, the Government filed an expedited response objecting to this Motion on February 13, 2006 (Docket # 300).

### III.  DISCUSSION

Defendant's Motion specifically seeks three types of relief: (1) "[a]n inquiry into any improper influence brought to bear on any juror;" (2) "an evidentiary hearing on the issue of prejudice against Mr. Brown created by any juror's exposure to Mr. Brown being in custody during jury selection;" and ultimately (3) "[a] new trial." (Def.'s Mot. (Docket # 298) at 2-3.) In short, the Court does not find that the record supports taking any of these actions. Rather, the limited information provided as well as the significant passage of time (both between the jury selection and the letter writing and between the jury trial and the filing of the pending motion) leads this Court to conclude that this record does not present an extraordinary situation and that the proper course is to leave the jury verdict undisturbed without conducting any further hearings.

### A.  The Alleged Comments Were Harmless

Assuming for the moment that the claims made in the August 22, 2006 Letter from Prospective Juror 8 are entirely true, the Court does not believe that the interaction between Prospective Juror 8 and a male member of the jury would have tainted the jury. First, the Court notes that this interaction took place before voir dire actually began. The

general inquiries made of all potential jurors regarding their ability to follow the Court's instructions and their ability to apply the presumption of innocence adequately screened for and corrected any misconceptions a juror may have had regarding any assumptions or deductions that could be made based merely on the fact that Robert Brown was in handcuffs at or around the time of jury selection. Second, the Court notes that the reaction of the male juror to the comments of Prospective Juror 8 (i.e., asking her, "How can you tell?") suggests that this juror did not actually view Robert Brown in handcuffs or deduce that Robert Brown was in custody based on what he actually saw upon Defendant's entry into the courtroom. Moreover, the Court notes that it received no information from anyone present at jury selection, including counsel, that suggested that Robert Brown was inadvertently observed in handcuffs at any time.

Third, the Court notes that the actual trial began some two weeks after jury selection. In all likelihood, Prospective Juror 8's comment was either long forgotten or, at least, no longer in the forefront of any juror's mind by the time the trial began. Finally, to the extent a juror might have had reason to recall this comment, the Court believes that its preliminary and final jury instructions made it clear that it would be patently improper for a juror to have based his or her deliberations on whether Robert Brown was in custody or, for that matter, on any comment heard during jury selection, which would clearly fall into the category of things that are not evidence.

The Court certainly considers Prospective Juror 8's deduction and comment prior to jury selection unfortunate and the Court strives to avoid any situation that allows a juror to make such a deduction regarding a defendant's custody status. However, for all the reasons just explained, the Court concludes that in this case the comments were

harmless and did not taint the jury.

**B.    Defendant Cannot Prove the Necessary Factors for a New Trial**

Defendant clearly did not know of Prospective Juror 8's claims of jury taint at the time of trial and, in light of the Court's post-trial <u>Kepreos</u> Order had no duty or ability to discover such claims. Even disregarding these aspects of the first and second factor, the Court believes that Defendant cannot meet its burden under Rule 33 due to lack of diligence and failure to prove that the alleged jury bias would have resulted in mistrial had it been brought to the Court's attention earlier.

With respect to lack of diligence, the Court is troubled by Defense Counsel's delay in bringing the August 22, 2006 Letter to the Court's attention. Waiting over five months to bring the letter to the Court's attention reflects a lack of diligence. Moreover, the delay certainly affects the Court's decision to not conduct further hearings or inquiries. Quite simply, based on the limited information provided, the Court is hard pressed to conclude that there is a basis for attempting to track down the nine men selected to serve on the panel and question each of them about a short conversation with Prospective Juror 8 that took place over a year ago.[4] Rather, the delay in bringing this matter to the Court's attention as well as the overall passage of time since trial weighs against conducting a further investigation or ordering a new trial.

Even disregarding the substantial delay, there is no basis for concluding that either a mistrial or a new trial would be necessary based merely on the comments of Prospective Juror 8. The First Circuit has previously held that "accidental viewings of

---

[4] As part of a preliminary investigation into this matter, the Court did confirm with the jury officer that there is no way of determining which male juror sat next to Prospective Juror 8 prior to the empaneling of the 32 prospective jurors. In addition, the Court confirmed that it retains access to the contact information provided by each of these jurors at the time of jury selection. Whether this now-dated contact information would actually allow the Court to track down each of the 9 male jurors would remain to be seen.

7

defendants in custody, although they are to be avoided, are not *per se* prejudicial." United States v. Williams, 809 F.2d 75, 84 (1st Cir. 1986), *cert. denied*, 482 U.S. 906 (1987).  The record before the Court presents an allegation that is, at best, two steps removed from an actual viewing of a defendant in custody by a juror.  Assuming the truth of the allegations, Defendant has suggested that there was a viewing by a *prospective* juror that was inadvertently shared with a member of the jury *prior* to trial and *prior* to any voir dire of the jury panel.  Having considered the timing and all of the circumstances surrounding the alleged comment, the Court concludes that the attenuated allegation does not support a finding of juror bias and, thus, does not require a new trial.

For the reasons just explained, the Court hereby DENIES Defendant's Motion for a New Trial (Docket # 298).

SO ORDERED.

  /s/ George Z. Singal
United States Chief District Judge

Dated this 15th day of February 2007.